UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JULIAN MANUEL SOSA HERNANDEZ, :
*individually and on behalf of all others similarly* :
*situated*, :
                                            :
                           Plaintiff, :
                                            :
         -against- :
                                            :
FU LONG FOOD PRODUCT INC. d/b/a Fu Long :
Deli & Grocery, ZHEN FU LU, and ZHAN ZHEN :
XU, :
                                            :
                             Defendants. :
------------------------------------------------------------------ x

                             <u>REPORT AND</u>
                             <u>RECOMMENDATION</u>

                             24-CV-8391 (NCM)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

        Plaintiff Julian Manuel Sosa Hernandez sued Defendants Fu Long Food Product Inc.,

doing business as Fu Long Deli & Grocery ("Fu Long"), Zhen Fu Lu ("Lu"), and Zhan Zhen

Xu ("Xu"), alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201

*et seq*. individually and on behalf of a collective, and the New York Labor Law (the "NYLL"),

N.Y. Lab. Law §§ 190 and 650 *et seq.* (*See generally* Compl., ECF No. 1.)[1]  Before the Court

is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2)

and Local Civil Rule 55.2(b), solely on his own behalf.  (*See generally* Mot., ECF No. 17.)

The Honorable Natasha C. Merle referred the motion for report and recommendation.  For the

reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default

judgment should be **granted in part** as follows: (1) default judgment should be entered against

Defendants, and (2) Plaintiff should be awarded damages as set forth herein.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted.

## I.      BACKGROUND

### A.      Facts

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Fu Long is a New York corporation with a principal place of business (a deli and grocery store) at 68-28 Fresh Meadow Lane in Flushing, New York.  (*See* Compl., ECF No. 1 ¶ 8.)  Lu and Xu are the owners, operators, and agents of Fu Long and are responsible for overseeing its daily operations, maintaining its employment records, and setting work schedules.  (*See id.* ¶¶ 12–14, 19.)  Xu and Lu have the ultimate power and authority over all personnel and payroll matters at Fu Long, including the power to hire and fire employees and set and pay their wages.  (*See id*. ¶¶ 15–18.)

Plaintiff was employed by Defendants at Fu Long from approximately October 2014 to November 2024 "as an organizer, food preparer, cook and cleaner" and performed miscellaneous other duties.  (*Id.* ¶ 22.)  He worked approximately 63 hours per week from 6:30 a.m. to 5:00 p.m. six days per week.  (*See id.* ¶¶ 24–25.)  Plaintiff was paid a flat wage of approximately $600.00 per week from December 2018 until December 2023, and $650.00 per week from January 2024 until the conclusion of his employment.  (*See id.* ¶ 26.)

Plaintiff alleges that Defendants did not pay him overtime wages for hours worked in excess of 40 hours per week, spread of hours pay for days on which he worked more than 10 hours, and any wages for his last week of work.  (*See id.* ¶¶ 27–29.)  Plaintiff further alleges

that Defendants did not provide wage notices and statements and that this failure caused him concrete harm.  (*See id.* ¶¶ 30–34.)

### B.    Procedural History

Plaintiff initiated this lawsuit on December 6, 2024.  (*See generally* Compl., ECF No. 1.)  Plaintiff served the complaint on Fu Long by personal service on December 10, 2024 and through the New York Secretary of State on December 19, 2024.  (*See* ECF Nos. 9, 12.) Plaintiff served Lu and Xu on December 10, 2024.  (*See* ECF Nos. 10–11.)  At Plaintiff's request, after Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against all Defendants on January 23, 2025.  (*See* ECF No. 15.)

Plaintiff filed the instant motion for default judgment on February 20, 2025, seeking unpaid overtime wages, unpaid spread of hours wages, liquidated damages, and post-judgment interest.  (*See generally* Mem., ECF No. 19.)  Judge Merle referred the motion for report and recommendation.  (Feb. 21, 2025 Order Ref. Mot.)  On April 7, 2025, the Court ordered Plaintiff to show cause for why the motion should not be denied for failure to serve the motion papers on the individual defendants at their last known residential addresses.  (*See* Apr. 7, 2025 Order to Show Cause.)  Plaintiff submitted supplemental materials responsive to the Order to Show Cause on April 21, 2025.  (*See* ECF No. 24.)

## II.    <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021)*.  First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R.

Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default judgment motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

In this case, Plaintiff purportedly moves for default judgment "*In a Sum Certain*" pursuant to Rule 55(b) (Mot., ECF No. 17 at 1), and later argues for liability and damages pursuant to Rule 55(b)(2) (Mem., ECF No. 20 at 7–20).  Plaintiff appears to conflate Rule 55(a), which governs the Clerk of Court's entry of default, with Rule 55(b)(1), which "permits entry of judgment by the clerk of court, without involvement of a judge, in circumstances where 'the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person.'"  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 n.17 (2d Cir. 2011) (quoting *Green*, 420 F.3d at 104).  However, a motion under

Rule 55(b)(1) would be improper—*i.e.*, Plaintiff's claim for relief "does not become a claim for a sum certain simply because he specified the amount of damages in the complaint or his supporting affidavit." *See Alexandru v. Brown*, No. 11-CV-2157 (CBA)(LB), 2012 WL 2319246, at *4 (E.D.N.Y. Feb. 16, 2012), *adopted by* 2012 WL 2320792 (E.D.N.Y. June 19, 2012) (denying Rule 55(b)(1) motion because "general allegations of damages [arising from a cause of action] . . . require the plaintiff to follow the procedures for obtaining a default judgment set forth in Rule 55(b)(2)"). Here, the Complaint alleges a "sum certain" only for the wage notice and wage statement claims, and the affidavits in the motion papers are nearly verbatim to the facts alleged in the Complaint. *Cf. Martinez v. 2009 Bamkp Corp.*, No. 18-CV-7414 (GBD)(KNF), 2019 WL 7708607, at *1, *6 (S.D.N.Y. Dec. 10, 2019) (recommending Rule 55(b)(1) motion for a sum certain should be granted where plaintiffs submitted affidavits, detailed damages calculation spreadsheets, and detailed records showing attorneys' fees and costs), *adopted by* 2020 WL 409691 (S.D.N.Y. Jan. 23, 2020). Therefore, as "[i]n all other cases," including this one, Rule 55(b)(2) governs the motion, under which the Court exercises discretion "to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis Pawn Shop*, 645 F.3d at 129 & n.17.

## III.    JURISDICTION & VENUE

### A.    Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *Mickalis Pawn Shop*, 645 F.3d at 125–27). The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331. The Court may also exercise

supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims.  28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sept. 14, 2024), *adopted by* 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024) (cleaned up).

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s.]" *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendants.  *First*, Plaintiff properly served Fu Long by delivering copies of the Summons and Complaint to Xu, in Xu's capacity as manager of Fu Long, and to the New York Secretary of State.  (*See* ECF Nos. 9, 12.)  These methods of service on a corporation each independently comply with federal and state procedural rules.  Fed. R. Civ. P. 4(h)(1)(A)–(B), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  Plaintiff also properly served Lu and Xu by personally delivering copies of the Summons and Complaint to them at Fu Long, their place of business, located at 68-28 Fresh Meadow Lane in Flushing.  (*See* ECF Nos. 10–11.)  This service method follows federal and state rules for service on individuals.  Fed. R. Civ. P. 4(e)(1), 4(e)(2)(A); N.Y. C.P.L.R. § 308(1).

*Second*, the Court has general jurisdiction over Fu Long, because it is a "New York corporation[] 'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Though Plaintiff does not allege Lu or Xu's domicile, the Court would have general jurisdiction over them if they were domiciled in New York.  *See id.* at *3. If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302."  *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up).  Lu and Xu conduct business within the state and "own and operate" Fu Long.  (Compl., ECF No. 1 ¶¶ 8, 12), which sufficiently establishes specific jurisdiction.  *Weitsman*, 2019 WL 7503022, at *3.

*Third*, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process."  *Francis*, 2018 WL 4292171, at *3.  Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Licci*, 673 F.3d at 60 (citation omitted).

For these reasons, the Court has personal jurisdiction over Defendants.

### C.    Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(b)(2).  Venue is

proper in this district because the failure to pay wages alleged in the Complaint occurred during Plaintiff's employment in Flushing, New York.  (Compl., ECF No. 1 ¶¶ 8, 22, 27–32.)

## IV.    PROCEDURAL COMPLIANCE

### A.    Local Civil Rules

Plaintiff has demonstrated that he took the required procedural steps to provide notice to the defaulting Defendants and to substantially comply with the requirements for default judgment motions.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") (cleaned up).  Plaintiff includes a notice of motion (ECF No. 17); a memorandum of law in support of the motion (ECF No. 19); an affidavit and exhibit (ECF Nos. 18, 18-9) showing that the Clerk has entered default against all Defendants; a proposed judgment (ECF No. 18-13); a statement of damages (ECF No. 18-12), together with a memorandum of law (ECF No. 19) and exhibit (ECF No. 18-11), showing the proposed damages and basis for each element of damages; and a certificate of service stating that all documents in support of the request for default judgment have been mailed to Lu and Xu's last known residential address and Fu Long's last known business address (ECF No. 20).  *See* Loc. Civ. Rs. 7.1(a)(1), 55(a)(1)(A), 55(a)(2), 55(a)(3), 55(c); *see also Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as compliant with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).  While the default judgment motion papers were initially mailed to all Defendants at Fu Long's business address, Plaintiff's supplemental materials show that: (1) Lu and Xu may reside at Fu Long's address; and (2) Plaintiff mailed

the default judgment motion papers to Lu and Xu at an alternative address on April 8, 2025. (ECF No. 24 at 1.)  Accordingly, Plaintiff has complied with this district's Local Civil Rules.

### B.    Servicemembers Civil Relief Act

Pursuant to the Servicemembers Civil Relief Act ("SCRA"), "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); see also Loc. Civ. R. 55.2(a)(1)(B).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of N.J. v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *see also Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).

Plaintiff complied with the SCRA because the process server affidavits show that when Lu and Xu were personally served with the Summons and Complaint, they each were asked about, and denied, active U.S. military service.  (ECF Nos. 10–11.)  Plaintiff also submitted status reports from the U.S. Department of Defense Manpower Data Center confirming that Lu and Xu are not in the military.  (*See* Avshalumov Aff. Exs. 6–7, ECF Nos. 18-6 & 18-7 (SCRA Searches).)  Accordingly, the Court finds that Plaintiff has complied with the SCRA.

## V.   <u>DEFAULT JUDGMENT FACTORS</u>

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment."  *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025).   Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor.  *First*, Defendants' "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *Tambriz v. Taste & Sabor*, *LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021).  *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances."  *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021).  *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court."  *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474

(EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible against Defendants.

## VI.    LIABILITY

### A.    Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). "The statute of limitations begins to run when an employee begins to work for the employer." *Esquivel*, 2023 WL 6338666, at *5. Plaintiff began working for Defendants in October 2014 and commenced this action on December 6, 2024. (*See* Compl., ECF No. 1 ¶ 7.) Therefore, in light of Defendants' default, Plaintiff may recover under the FLSA for any claims that accrued since December 6, 2021 and under the NYLL for any claims that accrued since December 6, 2018.

### B.    FLSA Coverage

To establish a minimum wage or overtime claim under the FLSA, the "Plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not

exempted from the FLSA." *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *7 (E.D.N.Y. Sept. 19, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (E.D.N.Y. Dec. 5, 2024); 29 U.S.C. §§ 206(a), 207(a).

### 1.    Employer Subject to the FLSA

The Complaint alleges that Defendants were Plaintiff's employers within the meaning of the FLSA.[2]  (Compl., ECF No. 1 ¶ 20.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce."  *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively.  *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

---

[2]  Specifically, the Complaint alleges that "New Cheung's Meat Wholesale Inc." is one of Plaintiff's employers within the meaning of the FLSA.  (Compl., ECF No. 1 ¶ 20.)  Because the remaining allegations in the Complaint are against Fu Long, the Court finds that the inclusion of "New Cheung's Meat Wholesale Inc." is a scrivener's error.  That said, counsel are warned that they risk dismissal of parties or claims when their pleadings do not reflect the facts of the case.

a.    **Fu Long**

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry*, 2022 WL 1018791, at *6. Here, the Complaint states, in a conclusory fashion, that Fu Long is Plaintiff's employer within the meaning of the FLSA because it "has purchased goods, tools, and supplies for its business through the streams and channels of interstate commerce, and has had employees engaged in interstate commerce and/or in the production of goods intended for commerce, and handle[s], sell[s] and otherwise work[s] with goods and material that have been moved in or produced for commerce by any person" and it "has had annual gross volume of sales of not less than $500,000.00." (Compl., ECF No. 1 ¶ 11.)

"On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'" *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *adopted by* Order Adopting R. & R., *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases). *But see Salamanca v. ABC Corp.*, No. 19-CV-1334 (WFK)(SIL), 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), *adopted by* 2021 WL 3269089 (E.D.N.Y. July 30, 2021) (in default judgment motion, finding no enterprise coverage

13

under the FLSA, but permitting NYLL claims to proceed) ("Vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless."). Plaintiff's factual allegation that Fu Long "does business as" a deli and grocery store, and his allegation that his work included preparing food, cooking, and cleaning (Compl., ECF No. 1 ¶ 22) (barely) establishes that Fu Long is a type of business that regularly engages in interstate commerce, for example, when he handles the "food, beverages, products, materials, and equipment utilized by the defendants." *Marine*, 2022 WL 17820084, at *3 (citing *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141, 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021)); *Esquivel*, 2023 WL 6338666, at *6 (finding enterprise coverage for a restaurant, in part because "it is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate commerce of more than $500,000 do not exclusively come from New York State."); *Fermin*, 93 F. Supp. 3d at 33 ("As a restaurant, it is reasonable to infer that [defendant] requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more . . . [and] that some of these materials moved or were produced in interstate commerce."). Therefore, it is reasonable to infer that Fu Long's supplies and products would have originated outside of New York.[3] Accordingly, Plaintiff's allegations are sufficient to establish FLSA enterprise coverage.[4]

---

[3] Notwithstanding this inference, "[t]he preferred practice would be to provide specific facts as to each element of [] Plaintiff's claim[s]." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411(ARR)(VMS), 2017 WL 835321, at *5 n.2 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

[4] Because the enterprise coverage test has been met, the Court need not address whether Plaintiff satisfies the individual coverage test.

### b.    Lu and Xu

With respect to an individual defendant, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61–62 (applying the *Carter* factors to determine individual liability under the FLSA). "The test looks at the totality of the circumstances, and no individual factor is dispositive." *See Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry*, 722 F.3d at 105).

Plaintiff has shown that Lu and Xu qualify as employers under the FLSA based on the operational control they exerted over Plaintiff and Fu Long. Plaintiff alleges that Lu and Xu "own and operate" Fu Long, are "responsible for overseeing [its] daily operations," "have the power and authority over all [its] final personnel" and "payroll decisions," "have the exclusive final power" to hire and fire employees, and "are responsible for determining, establishing,

and paying the wages of all [Fu Long's] employees." (*See* Compl., ECF No. 1 ¶¶ 12, 14–16, 18–19.)  These allegations are sufficient to establish that Lu and Xu are required to comply with the FLSA's overtime wage provisions.

## 2.   Employee Covered by the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).   "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'"  *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)).  The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements.  *See* 29 U.S.C. § 213(a) (listing multiple exemptions).  Whether a plaintiff-employee's activities fall under such exemptions is a question of law.  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Plaintiff's factual allegations establish that he was engaged in non-exempt employment under the FLSA.[5]  Specifically, the Complaint alleges that Plaintiff was employed as an "organizer, food preparer, cook and cleaner" for Defendants.  (Compl., ECF No. 1 ¶ 22.) Employment in positions with similar duties are not exempt from the FLSA.  *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 32 ("Plaintiffs' respective jobs as waiter, kitchen helper/food preparer, cook

---

[5] Defendants have not appeared in this case to assert or offer any facts to support a finding that Plaintiff is an exempt employee.  *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

and dishwasher all constitute non-exempt employment under the FLSA."); *Solis*, 2024 WL 4271234, at *8 (stating that waiters, bartenders, and busboys are nonexempt employees under the FLSA).   And while the Complaint alleges that Plaintiff also performed "related miscellaneous duties" (Compl., ECF No. 1 ¶ 22), nothing in the record suggests that those duties changed his employment to exempt status.   Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions.   Accordingly, Plaintiff qualifies for the protections of the FLSA.

### 3.     NYLL Coverage

In order to plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'"  *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190).  "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6).   Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee."  *Brito*, 2022 WL 875099, at *8 (internal quotation marks omitted) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).   The Court has already determined that Defendants are Plaintiff's employer within the meaning of the FLSA.   (*See* § VI.B.1., *supra*.)   "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . Defendants are Plaintiff's employers within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7.   Therefore, Plaintiff qualifies for the protections of the NYLL.

### C.    Joint & Several Liability

"As the Court has found that [Defendants] were jointly [Plaintiff's] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [Plaintiff's] favor." *Fermin*, 93 F. Supp. 3d at 37 (collecting cases); *see also Brito*, 2022 WL 875099, at *8.

### D.    Statutory Violations

In the Complaint, Plaintiff alleges that Defendants violated the FLSA and NYLL overtime wage provisions (Counts 1 and 2) and the NYLL provisions related to spread of hours pay, wage notices, and wage statements (Counts 5 through 7).  (*See* Compl., ECF No. 1 ¶¶ 47–74.)  Plaintiff also alleges that Defendants failed to pay him any wages for his final work week, in violation of the FLSA and NYLL (Counts 3 and 4) (*see id.* ¶¶ 29, 58–65), but abandons those claims in this default posture.  (*See* Mem., ECF No. 19 at 6, 14 (conceding that Plaintiff was paid for his final work week).)

#### 1.    FLSA & NYLL Violations

##### a.    Overtime Wages (Counts 1 and 2)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (alterations omitted) (quoting 29 U.S.C. § 207(a)(1)).  The NYLL includes the same requirement, providing that eight hours constitutes

18

a "legal day's work."  N.Y. Lab. Law § 160.  For hospitality workers such as Plaintiff,[6] "[a]n employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  12 N.Y.C.R.R. § 146-1.4.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Defendants failed to pay him the requisite overtime pay.  Plaintiff alleges that he "worked approximately sixty-three (63) hours per week" and was paid a fixed salary of "$600.00 per week for all hours worked from in or around December 2018 until in or around December 2023 and approximately $650.00 per week for all hours worked from in or around January 2024 until in or around November 2024."  (*See* Compl., ECF No. 1 ¶¶ 26–27.)  Plaintiff further alleges that "Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40)[.]"  (*Id.* ¶ 27.)  The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime wages under both the FLSA and NYLL.

---

[6] The term "hospitality industry" includes any restaurant or hotel.  12 N.Y.C.R.R. § 146-3.1(a).  In turn, "restaurant" includes "any eating or drinking place that prepares and offers food or beverage for human consumption . . . ."  *Id.* § 146-3.1(b).

2.    **NYLL Violations**

a.    **Spread of Hours (Count 5)**

For hospitality workers like Plaintiff, the NYLL's regulations also require that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a). The "spread of hours" is the length of time between the beginning and end of an employee's workday and includes "working time plus time off for meals plus intervals off duty." *Id.* § 146-1.6. A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in excess of 10 hours on a given day but did not receive spread of hours pay. *See Sanchez*, 643 F. Supp. 3d at 371. The spread of hours requirement applies to "all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay." 12 N.Y.C.R.R. § 146-1.6(d); *Pastuizaca v. Mihwa Jo Corp.*, No. 22-CV-5561 (MKB), 2025 WL 437929, at *9 (E.D.N.Y. Feb. 8, 2025) ("Because Plaintiff worked at a restaurant, he is eligible for spread of hours pay even though his regular rate of pay was above the minimum wage throughout his employment.")

Here, Plaintiff establishes that Defendants failed to pay him the requisite spread of hours pay. Plaintiff alleges that on each workday, he worked from approximately 6:30 a.m. to 5:00 p.m. (10.5 hours per day), that he received a fixed salary of $600.00 or $650.00 per week throughout his employment, and that he was not paid an additional hour for those days. (*See* Compl., ECF No. 1 ¶¶ 24, 26, 28.) As a restaurant worker, Plaintiff is entitled to spread of hours pay. *See* 12 N.Y.C.R.R. § 146-1.6(d). The Court respectfully recommends that, based on Plaintiff's undisputed allegations, Defendants should be liable for unpaid spread of hours pay.

**b.    Wage Notices & Wage Statements (Count 6 and 7)**

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number. N.Y. Lab. Law § 195(1)(a). The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*"). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm," *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). In other words, the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *11 (E.D.N.Y. Sept. 26, 2024) (quoting *Guthrie III*, 113 F.4th at 309), *adopted by* Order Adopting R. & R. *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025).

Here, the well-pleaded allegations of the Complaint establish that Defendants' failure to provide hiring notices and wage statements to Plaintiff caused him a tangible injury. *Cf. Guthrie II*, 2023 WL 2206568, at *6 (finding that plaintiff had not demonstrated how "technical violations" of the WTPA constituted a tangible injury). Plaintiff alleges the following: (1) "Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment"; (2) "Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid"; and (3) "[a]s a direct result . . . Plaintiff suffered a concrete harm" which resulted in Plaintiff being unable to "identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL" and to "calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours[.]" (Compl., ECF No. 1 ¶¶ 31–34.) Plaintiff sufficiently establishes Article III standing when he alleges that the denial of the statutory right to wage notices and wage

statements ultimately resulted in underpayment.  *See Guthrie III*, 113 F.4th at 309–10 (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)) ("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest" sufficient to establish standing); *see also*, *e.g.*, *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding that plaintiff had standing where he alleged that the failure to provide him with proper wage notices injured him by "'denying him the right to be adequately apprised of the terms and conditions of his employment,' including allowances defendants [purported] to claim against his salary").

The Court thus respectfully recommends that Defendants should be liable for violations of the NYLL's wage notice and wage statement provisions.

## VII.    **DAMAGES**

As Defendants' liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).  "On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'"  *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'"  *Lopez v. Royal*

*Thai Plus*, *LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Perry*, 2022 WL 1018791, at *3 ("In the context of a motion for default judgment on FLSA and NYLL claims, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (cleaned up).

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned during the same period." *Royal Thai Plus*, 2018 WL 1770660, at *10.  Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9.  Because the NYLL provides the same or greater recovery than the FLSA at all relevant times during Plaintiff's employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff seeks unpaid overtime wages and spread of hours pay, liquidated damages, statutory damages for WTPA violations, and post-judgment interest.  (*See* Mem., ECF No. 19 at 13–20; Damages Chart, ECF No. 18-12.)  The Court will address each category of damages in turn and will include Plaintiff's specific requested amounts, if any.[7]

---

[7] To the extent that the Court's calculations differ from Plaintiff's due to rounding or other discrepancies, the Court's calculations will govern.

Additionally, Plaintiff's proposed judgment requests attorneys' fees (*see* ECF No. 18-13 at 4), but the default judgment papers do not state this request and Plaintiff offers no evidence to support an

### A.    Overtime Wages

Plaintiff seeks $163,961.25 in unpaid overtime wages.  (*See* Damages Chart, ECF No. 18-12.)  As noted, "[u]nder both the FLSA and NYLL, [Plaintiff] [is] entitled to overtime compensation of at least one and one-half times [his] regular hourly rate" for hours worked in excess of 40 hours per week.  *Brito*, 2022 WL 875099, at *16; *Dejesus,* 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4.  "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'"  *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016)), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).  When a Plaintiff is paid above the minimum wage, however, the "overtime compensation [rate] should be determined by multiplying [the] agreed upon wage rate by one and one-half."  *Marvici v. Roche Facilities Maint. LLC*, No. 21-CV-4259 (AS)(JLC), 2023 WL 5810500, at *7 (S.D.N.Y. Sept. 8, 2023), *adopted by* 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023).

As an initial matter, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiff is entitled to recover the highest minimum wage rate available at any given period of his employment.  29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9.  Under New York law, the applicable minimum wage rate is determined

---

attorneys' fee award. The Court will again construe this errant phrasing as scrivener's error, and any request for attorneys' fees is abandoned.

by the size and location of the employer and the dates of the plaintiff's employment. *See* N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.

Due to the applicable statutes of limitation, Plaintiff may recover unpaid wages under the FLSA since December 6, 2021 and under the NYLL since December 6, 2018. (See § VI.A., *supra*.) Plaintiff alleges that Defendants employed "approximately 10 or more employees." (*see* Compl., ECF No. 1 ¶ 37), and Defendants are thus classified as "large employers" subject to the New York City rates for minimum wage.[8]  N.Y. Lab. Law § 652(1)(a)(ii).  During the relevant period, state and local minimum wage rates were higher than the federal minimum wage rate; thus, Plaintiff is entitled to compensation under the local minimum wage rate. *Compare* N.Y. Lab. Law § 652(1)(a)(i) (for employers with 11 or more employees, applicable New York City minimum wage rates of $13.00 per hour from December 6, 2018 to December 30, 2018 and $15.00 per hour on and after December 31, 2018), *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Next, "for purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Sanchez*, 643 F. Supp. 3d at 371 (cleaned up).  Under the NYLL, the regular rate of pay for hospitality industry employees "shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any." 12 N.Y.C.R.R. § 146-3.5(a).  "If an employer fails to pay an

---

[8] Based on Plaintiff's allegation that Defendants "employed approximately 10 or more employees," Defendants' classification is unclear.  If Defendants employed only 10 employees, they would be categorized as a "small employer" under the NYLL; if they employed 11 or more employees, they would be categorized as a "large employer." *See* N.Y. Lab. Law § 652(1)(a). Because the Court must draw all reasonable inferences in favor of the movant, *see Finkel*, 577 F.3d at 84, the Court assumes that Defendants employed at least 11 employees during the relevant period and thus qualify as a "large employer" under the NYLL.

employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5(b).

Plaintiff alleges that he was paid approximately $600.00 per week from December 2018 until December 2023 and $650.00 per week from January 2024 until the conclusion of his employment in November 2024.  (*See* Compl., ECF No. 1 ¶ 26.)[9]  To calculate Plaintiff's regular hourly rate, the Court will divide Plaintiff's "total weekly earnings" by 40 hours.  *See* 12 N.Y.C.R.R. § 146-3.5(b); *see also Chavez v. Roosevelt Tropical Corp.*, No. 23-CV-2413 (EK)(PK), 2024 WL 4244087, at *7 (E.D.N.Y. Aug. 21, 2024) ("Because Plaintiff worked 69 hours per week [and was paid a weekly wage], his hourly wage is calculated by dividing his weekly rate by 40 hours."), *adopted by* 2024 WL 4242218 (E.D.N.Y. Sept. 18, 2024); *Anzures v. Maredin Rest. Corp.*, No. 22-CV-2798 (EK)(JRC), 2024 WL 1376812, at *10–11 (E.D.N.Y. Jan. 24, 2024) (applying similar formula for weekly-paid plaintiffs), *adopted by* 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024).  By dividing the total weekly pay by 40, the Court determines Plaintiff's regular hourly rate of pay to be $15.00 per hour from December 6, 2018 to December 31, 2023 (*i.e.*, $600.00 per week ÷ 40 hours per week) and $16.25 per hour from

---

[9] Plaintiff's approximations make it difficult for the Court to determine exactly when Plaintiff's salary increased or when his employment began and ended.  (*See* Compl., ECF No. 1 ¶ 26; Hernandez Aff., ECF No. 18-11 ¶ 11.)  However, Plaintiff's damages calculation more precisely states that Plaintiff was paid $600.00 per week until December 31, 2023 and $650.00 per week thereafter until November 30, 2024.  (*See* Damages Chart, ECF No. 18-12.)  The Court will use these dates for its calculations.

approximately January 1, 2024 to November 30, 2024 (*i.e.*, $650.00 per week ÷ 40 hours per week).

Plaintiff is entitled to one-and-one-half times his regular rate of pay because, throughout his employment, his regular pay rate either equaled or exceeded the applicable minimum wage rates. Therefore, the Court will multiply his regular pay rate by 1.5 to calculate his overtime pay rate. *See Brito*, 2022 WL 875099, at *16. "Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage times 1.5) by the total number of overtime hours worked" per week, and multiplying that product by the number of weeks during the relevant time period. *Sanchez*, 643 F. Supp. 3d at 377.

Plaintiff worked 63 hours per week, of which 23 hours should have been paid at the overtime rate. (*See* Compl., ECF No. 1 ¶ 27.) For example, between December 6, 2018 and December 31, 2023, he was paid at the regular hourly rate of $15.00 for all hours worked, but should have been paid $22.50 per hour for 23 hours of overtime. The Court calculates his unpaid overtime for this period as $45,614.18 (*i.e.*, (($22.50 – $15.00) × 23 hours × 264.43 weeks)). Applying this formula, Plaintiff is entitled to the total unpaid overtime wages listed in Table 1:

*Table 1, Unpaid Overtime Wages*

| Time Period | Regular Rate of Pay | NYLL OT Rate | Diff. between OT and Reg. Pay Rate | OT Rate Hours Worked per Week | Weeks[10] | Total Unpaid OT Wages |
|---|---|---|---|---|---|---|
| 12/06/2018 to 12/31/2023 | $15.00 | $22.50 | $7.50 | 23 | 264.43 | $45,614.18 |
| 01/01/2024 to 11/30/2024 | $16.25 | $24.38 | $8.13 | 23 | 47.71 | $8,921.29 |
| | | | | | | |
| | | | | | | |
| | | | | | Total: | $54,535.47 |

In contrast, Plaintiff's damages calculation applies the incorrect number of unpaid hours worked. (*See* Damages Chart, ECF No. 18-12.) Plaintiff alleges that he is entitled to 23 hours of unpaid overtime per workweek. (*See* Compl., ECF No. 1 ¶¶ 27, 47–53; Hernandez Aff., ECF No. 18-11 ¶ 14.) Plaintiff calculates the total unpaid overtime wage by multiplying all hours worked each week (63) by the applicable hourly overtime rate, and then further multiplying that number by the number of weeks in each year in which he claims damages. (*See* Damages Chart, ECF No. 18-12.) This formula assumes that Plaintiff was never paid *any* amount each week, contrary to his sworn statements that he received either $600.00 per week or $650.00 per week for all 63 hours worked. (Hernandez Aff., ECF No. 18-11 ¶ 11.) While Plaintiff was not paid any overtime premium pay for any hours worked over 40, he was paid at least his regular pay rate per hour, as set forth above. The Court thus declines to adopt Plaintiff's formula for overtime pay damages.

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$54,535.47** for unpaid overtime wages.

---

[10] "Weeks" refers to the number of weeks during the corresponding dates of employment in each row.

### B.    Spread of Hours Pay

Plaintiff seeks $28,379.14 in unpaid spread of hours pay.  (*See* Damages Chart, ECF No. 18-12.)  "'The NYLL spread-of-hours claim, for which there is no counterpart under the FLSA, provides that an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours.'"  *Esquivel*, 2023 WL 6338666, at *13 (quoting *Fermin*, 93 F. Supp. 3d at 45 (cleaned up) and citing 12 N.Y.C.R.R. § 146-1.6(a)).  "[S]pread of hours damages are calculated based on the applicable minimum wage rates for the relevant time period."  *Solis*, 2024 WL 4271234, at *15.

During the relevant time periods, Plaintiff alleges that he worked 10.5 hours per day throughout his employment and that Defendants failed to pay him spread of hours ("SOH") for those days.  (*See* Compl., ECF No. 1 ¶¶ 24, 28; Hernandez Aff., ECF No. 18-11 ¶¶ 9, 15.) To calculate the SOH premium owed, the Court multiplies the number of weeks per period by 6 (Plaintiff's weekly spread of hours days worked) by the applicable minimum wage (e.g., Weeks × SOH Days per Week × Minimum Wage).   Therefore, Plaintiff is entitled to unpaid spread of hours pay as set forth in Table 2:

*Table 2, Unpaid Spread of Hours Pay*

| Time Period | NYLL Min. Wage | Weeks | Spread of Hours Days per week | Total Unpaid SOH Pay |
|---|---|---|---|---|
| 12/06/2018 to 12/30/2018 | $13.00 | 3.43 | 6 | $267.54 |
| 12/31/2018 to 11/30/2024 | $15.00 | 308.71 | 6 | $27,783.90 |
| | | Total: | | $28,051.44 |

Accordingly, the Court respectfully recommends awarding Plaintiff **$28,051.44** for unpaid spread of hours pay.

C.    **Liquidated Damages**

Plaintiff seeks $192,340.39 in liquidated damages.  (*See* Damages Chart, ECF No. 18-12.)  Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime, minimum wage, and spread of hours compensation, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)); *see Royal Thai Plus*, 2018 WL 1770660 at *11 ("Under NYLL, liquidated damages are available for both unpaid overtime compensation and spread of hours compensation[.]").  However, the FLSA and the NYLL prohibit "duplicative liquidated damages for the same course of conduct.  Double recovery is generally disfavored." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery."  *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *13 (E.D.N.Y. Dec. 9, 2019), *adopted by* Order Adopting R. & R. (E.D.N.Y. Mar. 31, 2020). Here, where Defendants defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate.  Accordingly, the Court respectfully recommends that Plaintiff should be awarded an additional **$82,586.91** in liquidated damages under the NYLL only.[11]

---

[11] The total includes $54,535.47 for unpaid overtime pay and $28,051.44 for unpaid spread of hours premium pay.  (*See* §§ VII.A.–B., *supra*.)

### D.    Wage Notices & Wage Statements

Plaintiff seeks $10,000.00 for wage notices and statements violations.  (*See* Damages Chart, ECF No. 18-12.)  The penalty for failing to provide a wage notice is $50.00 per day, up to $5,000.00 (*i.e.*, 100 days), and the penalty for failing to provide wage statements is $250.00 per day, up to $5,000.00 (*i.e.*, 20 days).  *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (citing N.Y. Lab. Law §§ 198(1-b) & 198(1-d)), *adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023).   As alleged, Plaintiff worked for more than 100 days without receiving wage notices and worked more than 20 days without receiving wage statements.  (*See* Compl., ECF No. 1 ¶ 28.)  Plaintiff thus is entitled to the maximum statutory damages of $5,000.00 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3).   Therefore, the Court respectfully recommends that Plaintiff should be awarded **$10,000.00** for violations of NYLL §§ 195(1) and 195(3).

### E.    Post-Judgment Interest

A plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court."  *Brito*, 2022 WL 875099, at *27.   "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).   Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 17 should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment at ECF No. 18-3 as amended[12] against Defendants Fu Long Food Product Inc., doing business as Fu Long Deli & Grocery, Zhen Fu Lu, and Zhan Zhen Xu; and (2) Plaintiff should be awarded damages in the amount of **$175,173.82**, which includes: (a) **$54,535.47** for unpaid overtime wages; (b) **$28,051.44** in unpaid spread of hours pay; and (d) **$82,586.91** in liquidated damages; (e) **$10,000.00** for wage notice and wage statement violations; and (f) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to all Defendants at 68-28 Fresh Meadow Lane, Flushing, New York 11365 and to Defendants Lu and Xu at 19 Piccadilly Road, Great Neck, New York 11023.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Merle.  If a party

---

[12] The proposed judgment at ECF No. 18-13 should be amended to reflect this Report and Recommendation, if adopted, or the Court's order, if modified, especially but not limited to deleting any mention of attorneys' fees.  (*See* ECF No. 18-13 at 4.)

fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
August 26, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge